# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| GEORGE MAPEL, et al., | ) | CASE NO.  5:26-cv-68 |
| | ) | |
| Plaintiffs, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| TUSCARAWAS PROBATE COURT, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* plaintiffs, George and Melissa Mapel, filed this civil rights action under 42 U.S.C. § 1983 against the Tuscarawas County Juvenile and Probate Court; Tuscarawas Job & Family Services; Katrina Smith, with the Ohio Network for Innovation; Tuscarawas County Board of Developmental Disabilities; Tuscarawas County Juvenile and Probate Court Judge Adam W. Wilgus; and Tuscarawas County Juvenile and Probate Court Magistrate Karen Ross Quinlan. (Doc. No. 1 (Complaint).) Plaintiffs' complaint concerns guardianship and custody proceedings in the Tuscarawas County Juvenile and Probate Court. For relief, plaintiffs request an independent investigation of the agencies involved in the state court proceedings, a "fair trial," the restoration of parental rights, and "reimbursement for all we lost and paid out." (Doc. Nos. 1, at 4[1]; 1-2 (Affidavit of Melissa Mapel), at 3 ¶ 20; 1-3 (Affidavit of George Mapel), at 3 ¶ 19.) For the following reasons, the Court dismisses plaintiffs' complaint.

---

[1] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

Plaintiffs also filed an application to proceed *in forma pauperis*. (Doc. No. 2.) The application is granted.

## I.      BACKGROUND

Plaintiffs' complaint consists of a brief statement of claim—"took Melissa's freedom of speech, refused evidence, took George's right to due process and our children and grandson" (Doc. No. 1, at 4)—and affidavits of each plaintiff. (Doc. Nos. 1-2; 1-3.) The affidavits outline actions taken by defendants during the pendency of state court proceedings involving the guardianship of plaintiffs' daughter and the apparent custody or visitation of plaintiffs' grandson. Plaintiffs challenge the reports and investigation made by the Tuscarawas County Board of Developmental Disabilities, the involvement of Katrina Smith and the Ohio Network for Innovation, the investigation by the Tuscarawas Job & Family Services, and numerous decisions issued by Judge Wilgus and Magistrate Quinlan in the course of the state court proceedings. (*See generally* Doc. Nos. 1; 1-2; 1-3.) Plaintiffs complain that guardianship was granted to the Ohio Network for Innovation, their grandson was removed from plaintiffs' home, and George Mapel's petition for grandparent rights was denied without a hearing. (*Id*.) Plaintiffs allege defendants denied them due process, equal protection of the laws, and meaningful access to the courts, in violation of the First and Fourteenth Amendments. (*Id*.)

## II.      STANDARD OF REVIEW

*Pro se* pleadings are liberally construed. *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S. Ct. 700, 70 L. Ed. 2d 551 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972). The court, however, is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks

an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in the Complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The factual allegations in the pleading must be sufficient to "raise a right to relief above the speculative level" on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations but must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.* In reviewing a complaint, the court "must construe the pleading in a light most favorable to the plaintiff." *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998).

III.    DISCUSSION

A.  Jurisdiction

Plaintiffs request that this Court overturn a state court judgment and issue judgment in their favor, seeking "restoration of parental and familial rights." (Doc. Nos. 1-2; 1-3.) For four independent reasons, this Court lacks jurisdiction to provide plaintiffs the relief they seek.

*1. Rooker-Feldman Doctrine*

The *Rooker-Feldman* doctrine prohibits federal court review of a state-court judgment wherein a party claims a state-court proceeding or judgment itself violated their federal rights. *Berry v. Schmitt*, 688 F.3d 290, 298–99 (6th Cir. 2012). Just this term the Supreme Court clarified that "[u]nder what has become known as the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *T. M. v. U. of Maryland Med. System Corp.*, No. 25-197, 2026 WL 1751823, at *3 (U.S. June 18, 2026) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005). Federal appellate review of state court judgments can only occur in the United States Supreme Court: "'appellate jurisdiction to reverse or modify a state-court judgment is lodged, ... by 28 U. S. C. § 1257, exclusively in [the Supreme] Court.' Federal district courts, by contrast, are 'empowered to exercise [only] original, not appellate, jurisdiction.'" *Id.* at *7 (internal citation omitted); *see also Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476, 482, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414–16, 44 S. Ct. 149, 68 L. Ed. 362 (1923).

The *Rooker-Feldman* doctrine applies only when a party which lost their case in state court initiates an action in federal district court complaining of an injury caused by a state court judgment or proceeding and seeks review and rejection of that judgment. *T.M.*, 2026 WL 1751823, at *3; *Berry*, 688 F.3d 298–99; *In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009). To determine whether *Rooker-Feldman* bars a claim, the court must look to "the source of the injury the plaintiff alleges

4

in the federal complaint." *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006); *see Berry*, 688 F.3d at 299. If the source of the plaintiff's injury is the state court judgment itself, then the *Rooker-Feldman* doctrine bars the federal claim. *McCormick*, 451 F.3d at 393. "If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim." *Id.*; *see Lawrence v. Welch*, 531 F.3d 364, 368–69 (6th Cir. 2008). In conducting this inquiry, the Court also considers the plaintiff's requested relief. *Evans v. Cordray*, 424 F. App'x 537, 539 (6th Cir. 2011).

Here, the source of plaintiffs' alleged injury appears to be Judge Wilgus's and Magistrate Quinlan's orders concerning plaintiffs' parental rights, and plaintiffs move this Court to vacate the state court orders and enter judgment in their favor. Pursuant to *Rooker-Feldman*, this Court lacks jurisdiction to review the state court judgments of the Tuscarawas County Juvenile and Probate Court. For this reason alone, the action must be dismissed.

### 2. Res Judicata

In their complaint, plaintiffs' prayer for relief also appears to request a new trial on the same issues previously disposed of in the state court proceedings. (Doc. No. 1, at 4.) To the extent plaintiffs seek to relitigate the parental rights matter or any other matter already decided by the Tuscarawas County Juvenile and Probate Court, their claims are also barred by *res judicata*.

The doctrine of *res judicata* bars duplicative litigation based on the same event or events. *Montana v. United States*, 440 U.S. 147, 153, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979); *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979). The term "res judicata" literally means "a thing [already] adjudicated." RES JUDICATA, Black's Law Dictionary (12th ed. 2024). When one court has already resolved the merits of a case, another court

5

will not revisit them. *Montana*, 440 U.S. at 153; *Parklane Hosiery*, 439 U.S. at 326. The doctrine of *res judicata* therefore precludes a party from bringing a subsequent lawsuit on the same claim or from raising a new defense to defeat the prior judgment. *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 660 (6th Cir. 1990). *Res judicata* bars—separate and apart from *Rooker-Feldman*—a plaintiff from relitigating in federal court claims and issues that were previously "litigated or which should have been litigated" by a state court. *Bragg v. Flint Bd. of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009).

Here, plaintiffs are challenging the judgment of the Tuscarawas County Juvenile and Probate Court concerning the guardianship of their daughter, the removal of their grandson from the home, and the purported custody proceedings concerning their grandson. Plaintiffs claim they were denied due process, equal protection of the laws, and meaningful access to the courts during these state court proceedings. Plaintiffs raised, or could have raised, their federal claims in the state court proceedings. Plaintiffs may not now relitigate those issues here in the hope of obtaining a different result. For this additional reason, the complaint is subject to dismissal.

### 3. Domestic-Relations Exception

"That Article III, § 2, does not mandate the exclusion of domestic relations cases from federal-court jurisdiction, however, does not mean that such courts necessarily must retain and exercise jurisdiction over such cases." *Ankenbrandt v. Richards*, 504 U.S. 689, 697, 112 S. Ct. 2206, 119 L. Ed. 2d 468 (1992); *Kelm*, 44 F.3d at 420 ("In *Ankenbrandt,* although the Court narrowed the scope of the traditional 'domestic relations exception,' the Court did not overrule its prior decisions holding that domestic relations is 'a traditional area of state concern.'") In the Sixth Circuit, "the domestic-relations exception applies 'to both federal-question and diversity suits.'"

*Edelstein v. Flottman*, No. 24-3156, 2025 WL 609487, at *2 (6th Cir. Jan. 10, 2025) (citation omitted). As in *Edelstein*, although the plaintiffs here have "couched their claims against the defendants in terms of constitutional violations, a review of their [] complaint and prayer for relief reflects that the substance of the claims revolves around the state courts' decisions in the domestic-relations proceedings as they relate to [] custody and [] visitation rights." *Id*. at *3; (*see*, *e.g*., Doc. Nos. 1; 1-2; 1-3). Because the core of plaintiffs' claims "as alleged here, fall within the domestic-relations exception" abstention is appropriate and the Court lacks jurisdiction for this additional reason. *Edelstein*, 2025 WL 609487, at *3.

### 4. Younger Abstention

Finally, "federal courts should not entertain challenges to pending state court proceedings where intervention would improperly impinge on important state interests." *Watts v. Burkhart*, 854 F.2d 839, 844–48 (6th Cir. 1988). *Younger* abstention is appropriate "when the state proceeding (1) is currently pending, (2) involves an important state interest, and (3) affords the plaintiff an adequate opportunity to raise constitutional claims." *Leveye v. Metro. Pub. Def. Office*, 73 F. App'x 792, 794 (6th Cir. 2003) (citations omitted). "*Younger* ... and its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex Cnty. Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S. Ct. 2515, 73 L. Ed. 2d 116 (1982). The Supreme Court has extended *Younger* abstention "to noncriminal judicial proceedings when important state interests are involved." *Id*. at 432. To the extent plaintiffs' state court proceedings are pending, implicate important state interests, and plaintiff had or has an adequate opportunity to raise constitutional claims, this Court abstains from hearing challenges to those proceedings. *Huffman v. Pursue, Ltd.*, 420 U.S. 592,

7

603–05, 95 S. Ct. 1200, 43 L. Ed. 2d 482 (1975); *Younger v. Harris*, 401 U.S. 37, 43–45, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).

### i. Pending State Proceedings

The first condition for *Younger* abstention is whether a state proceeding "is currently pending." *Leveye*, 73 F. App'x at 794; *Fed. Express Corp. v. Tenn. Pub. Serv. Comm'n*, 925 F.2d 962, 969 (6th Cir. 1991) ("if a state [judicial] proceeding is pending at the time the action is filed in federal court, the first criteria for *Younger* abstention is satisfied" (citation omitted)). Plaintiffs' failure to appeal the decision of the appeals court to the Supreme Court of Ohio within the prescribed forty-five days per Ohio S. Ct. Prac. R. 7.01(A)(1)(a)(i) does not provide for an end-run around the "currently pending" prong of *Younger* abstention.[2] *Huffman.*, 420 U.S. at 608 ("regardless of when the Court of Common Pleas' judgment became final, we believe that a necessary concomitant of *Younger* is that a party in appellee's posture must exhaust his state appellate remedies before seeking relief in the District Court, unless he can bring himself within one of the exceptions specified in *Younger*"). Plaintiffs' complaint further identifies pending state-court proceedings which occurred as recently as April 2025: "[o]n April 3 2025, Judge Wilgus acted on filings ... ." (Doc. No. 1-2, at 1.) There is no evidence that plaintiffs' have appealed Judge Wilgus's most recent ruling or exhausted remedies available to them in state proceedings.

---

[2] "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Starlink Logistics, Inc. v. ACC, LLC*, No. 1:18-cv-29, 2019 WL 2341403, at *4 (M.D. Tenn. June 3, 2019) (quotation marks and citation omitted). The Court takes judicial notice of Ohio's Fifth District Court of Appeal's September 15, 2025, decision to affirm the December 4, 2024, judgment of the Tuscarawas County Court of Common Pleas, Probate Division in the case styled *Matter of Guardianship of Mapel*, 2025-Ohio-4344 and plaintiffs' lack of an appeal to the Supreme Court of Ohio as of January 12, 2026, the day plaintiffs filed their complaint in federal court.

Plaintiffs' state-court proceeding is therefore pending unless and until plaintiffs' exhaust the state-court remedies available to them. The Court finds that the first criterion has been satisfied.

### ii. Important State Interest

The second condition for *Younger* abstention is whether a state proceeding "involves an important state interest." *Leveye*, 73 F. App'x at 794. The Supreme Court has extended "*Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions, or that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73, 134 S. Ct. 584, 187 L. Ed. 2d 505 (2013); *see also Middlesex,* 457 U.S. at 432. State court proceedings involving domestic relations and child custody, visitation, or support matters implicate important state interests. *See Butterfield v. Steiner*, No. C2-01-1224, 2002 WL 31159304, at *6 (S.D. Ohio Sept. 5, 2002) ("Federal courts have consistently recognized that matters relating to domestic relations cases and child custody disputes implicate important state interests[.]" (citing *Moore v. Sims*, 442 U.S. 415, 99 S. Ct. 2371, 60 L. Ed. 2d 994 (1979))); *Kelm v. Hyatt*, 44 F.3d 415, 420 (6th Cir. 1995) ("traditional domestic relations issues qualify as important state issues under the second element of *Younger*"). Because plaintiffs' claims concern the issue of child custody, the state-court proceeding "involves an important state interest." *Leveye*, 73 F. App'x at 794. The Court finds that the second criterion has been satisfied.

### iii. Adequate Opportunity to Raise Constitutional Claims

The third condition for *Younger* abstention is whether a state proceeding "affords the plaintiff an adequate opportunity to raise constitutional claims." *Id.*; *Moore*, 442 U.S. at 430. If a state litigant "has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy" and defer.

9

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S. Ct. 1519, 95 L. Ed. 2d 1 (1987). This Court must presume that the state courts are able the protect the interests of a federal plaintiff "in the absence of unambiguous authority to the contrary." *Id.*

Plaintiffs have alleged various serious violations of their federal rights. (*See generally* Doc. Nos. 1; 1-2; 1-3.) However, "[t]he plaintiff bears the burden of showing that state law barred presentation of his or her constitutional claims." *Squire v. Coughlan*, 469 F.3d 551, 556 (6th Cir. 2006); *see also Szarell v. Summit Cnty. Ct. of Common Pleas*, No. 5:18-cv-2975, 2019 WL 3946191, at *3 (N.D. Ohio Aug. 21, 2019) (the third factor of *Younger* abstention was satisfied where the plaintiff failed to allege in the pleadings that state court proceedings did not or could not provide her with an opportunity to present her federal claim). Plaintiffs' allegations, while undoubtedly touching on serious federal concerns, fail to adequately allege that Ohio state procedures—not limited to the Court of Tuscarawas County Common Pleas, Probate Division— have failed to provide "an adequate opportunity to raise [their] constitutional claims." *Leveye*, 73 F. App'x at 794. In the absence of such allegations, this Court presumes that the state-court proceedings will adequately protect plaintiffs' interests. *Pennzoil*, 481 U.S. at 15. The Court finds that the third criterion has been satisfied.

### iv. Exceptions to *Younger* Abstention

Even when all three preconditions to *Younger* abstention are met, evidence of "bad faith, harassment, or flagrant unconstitutionality" may yet render applying the doctrine inappropriate. *Squire*, 469 F.3d at 557 (citation and internal quotation marks omitted). Abstention is likewise inappropriate where there is "an extraordinarily pressing need for immediate federal equitable relief." *Kugler v. Helfant*, 421 U.S. 117, 125, 95 S. Ct. 1524, 44 L. Ed. 2d 15 (1975).

In *Huffman*, the Supreme Court explained that the first exception applies if "the state proceeding is motivated by a desire to harass or is conducted in bad faith." 420 U.S. at 611. In the Sixth Circuit "[t]he standard for evaluating claims of bad faith and bias is difficult to meet" and plaintiffs' conclusory assertions of bad faith against defendants fails to meet this high standard. *Berger v. Cuyahoga Cnty. Bar Ass'n*, 775 F. Supp. 1096, 1100 (N.D. Ohio 1991), *aff'd*, 983 F.2d 718 (6th Cir. 1993); *Ken–N.K., Inc. v. Vernon Twp.*, 18 F. App'x 319 (6th Cir. 2001). The standard for the second exception, demonstrating flagrant unconstitutionality, is even higher than for bad faith. *Zalman v. Armstrong*, 802 F.2d 199, 206 (6th Cir. 1986) ("*Younger* itself illustrates the narrowness of the 'flagrantly and patently violative … in every clause ... and in whatever manner and against whomever' exception.") Because the state-court proceedings at issue cannot seriously amount to flagrant unconstitutionality, plaintiffs' assertions fail to meet the exceedingly high standard for this exception to apply. The third exception: "an extraordinarily pressing need for immediate equitable relief" is reserved for situations when the court determines that the state proceedings are inadequate because there is no available state forum for the plaintiffs' constitutional claims, *Gerstein v. Pugh,* 420 U.S. 103, 107–08, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975), or the state judicial or administrative officers have a conflict of interest or are biased. *Gibson v. Berryhill,* 411 U.S. 564, 576–78, 93 S. Ct. 1689, 36 L. Ed. 2d 488 (1973). As outlined above, there is no evidence that the state proceedings have failed to provide plaintiffs the opportunity to raise their constitutional defense, and there is no showing or allegation that the state judiciary is biased. The third exception does not apply.

**B. Failure to State a Claim**

Even if the Court had jurisdiction over plaintiffs' claims, plaintiffs fail to state a plausible claim against any of the defendants. To state a claim upon which relief can be granted under 42 U.S.C. § 1983, a plaintiff must allege that (1) a right secured by the Constitution or a federal statute has been violated, and (2) the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015). To be considered to have acted "under color of state law" for purposes of § 1983, generally, a person must be a state or local government official or employee. A private party may be found to have acted under color of state law only when the party "acted together with or ... obtained significant aid from state officials" and did so to such a degree that its actions may properly be characterized as "state action." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937–39, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982). An individual may also be considered a state actor if he or she exercises powers traditionally reserved to a state. *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974).

Plaintiffs' complaint includes allegations against Katrina Smith, a purported employee of Ohio Network Innovation, a non-profit corporation that provides services to individuals, families, communities, and courts.[3] Smith is not a state official. And there is no suggestion in the complaint that Smith was acting on behalf of, or obtaining significant aid from, the state such that her conduct may be considered state action. Nor do plaintiffs allege any facts suggesting that this defendant exercised a power that is reserved exclusively for the State of Ohio. Smith is, therefore, not subject to liability under § 1983.

---

[3] *See* https://perma.cc/GWZ9-7ZNM (last visited June 25, 2026).

Additionally, Judge Wilgus and Magistrate Quinlan are immune from suit. It is well established that judicial officers are generally entitled to absolute immunity from civil suits for money damages. *Mireles v. Waco*, 502 U.S. 9, 9–10, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Judicial officers are accorded this broad protection to ensure that the independent and impartial exercise of their judgment in a case is not impaired by the potential for exposure to damages from dissatisfied litigants. *Barnes*, 105 F.3d at 1115. For this reason, absolute immunity is overcome only when (1) the conduct alleged is performed at a time when the defendant is not acting as a judge; or (2) the conduct alleged, although judicial in nature, is taken in complete absence of all subject matter jurisdiction of the court over which they preside. *Mireles*, 502 U.S. at 11–12; *Barnes*, 105 F.3d at 1116. A judge will not be deprived of immunity even if the action at issue was performed "in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978); *Sevier v. Turner*, 742 F.2d 262, 271 (6th Cir. 1984) (merely acting in excess of their authority does not mean a judicial officer is acting in the clear absence of all jurisdiction and thereby preclude immunity).

Here, plaintiffs' complaint offers no indication that Judge Wilgus or Magistrate Quinlan were acting in any capacity other than that of a judicial officer when the alleged conduct occurred. Further, plaintiffs appear to object to decisions that the judge and magistrate made in connection with Tuscarawas County Court proceedings. Decisions concerning pending motions, pretrial and trial proceedings, and the removal of children are all actions typically performed by judicial officers in state juvenile and probate court matters. Plaintiffs have, therefore, failed to establish that these judicial officers acted clearly outside of the subject matter jurisdiction of the court over

13

which they preside. Judge Wilgus and Magistrate Quinlan are, therefore, absolutely immune from damages in this action.

Moreover, plaintiffs cannot state a claim for relief against the Tuscarawas County Juvenile and Probate Court or the Tuscarawas County Job & Family Services because neither entity is capable of being sued for civil rights violations under § 1983. Absent statutory authority, courts are not *sui juris*, meaning they are not legal entities separate from the county that can sue or be sued in its own right. *See Bey v. S. Euclid Mun. Ct.*, No. 1:25-cv-01157, 2025 WL 2605418, at *2 (N.D. Ohio Sept. 9, 2025) (citing *Malone v. Ct. of Common Pleas of Cuyahoga Cnty.*, 344 N.E.2d 126, 128 (Ohio 1976) ("Absent express statutory authority, a court can neither sue nor be sued in its own right.")); *see also Black v. Montgomery Cnty. Common Pleas Court*, No. 3:18-cv-123, 2018 WL 2473560, at *1 (S.D. Ohio June 4, 2018) (finding County Common Pleas Court was not *sui juris*); *Loper v. Cuyahoga Cnty. Children & Family Servs.*, No. 1:18-cv-1598, 2019 WL 1597552, at *5 (N.D. Ohio Apr. 15, 2019) (finding Cuyahoga County Children and Family Services "is not *sui juris* and cannot be sued in its own right"); *Wilson v. Trumbull Cnty. Dep't of Job & Family Servs.*, No. 4:12-cv-02163, 2013 WL 5820276, at *3 (N.D. Ohio Oct. 29, 2013) (collecting cases and finding that "numerous district courts have found that county agencies are not *sui juris*," and granting defendant Trumbull County Adult Protective Services' motion to dismiss because the county agency lacks the capacity to be sued).

Finally, the Tuscarawas County Board of Developmental Disabilities is a municipal entity. *See Sivi v. Franklin Cnty. Guardianship Serv. Bd.*, No. 2:24-cv-4191, 2026 WL 656966, at *7 (S.D. Ohio Mar. 9, 2026) (citing O.R.C. § 5126). Section 1983 does not permit a plaintiff to sue a local government entity or municipality on the theory of respondeat superior for an injury allegedly

14

inflicted solely by its employees or agents. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 692–94, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Rather, municipal liability attaches when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694. "Beyond having to identify 'conduct properly attributable to the municipality,' a plaintiff 'must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged.' In other words, 'a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Brown v. Chapman*, 814 F.3d 447, 462 (6th Cir. 2016) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)).

Here, plaintiffs appear to challenge a Tuscarawas County Board of Developmental Disabilities employee's reports to the Tuscarawas County Job & Family Services and the subsequent involvement of the Ohio Network for Innovation. They state that following the outcome of the guardianship proceedings, "a key individual involved in the case later obtained a promotion to [the Board's] Director," suggesting an improper motive. (Doc. Nos. 1-2, at 2; 1-3, at 2 ¶ 5.) The complaint, however, fails to suggest that any customs or policies of Tuscarawas County caused plaintiffs' alleged injuries. Plaintiffs, therefore, fail to state a claim for relief against the Tuscarawas Board of Developmental Disabilities. *See Sivi*, 2026 WL 656966, at *7 ("Because there was no policy or custom belonging to [the Board of Developmental Disabilities] at work in its initiating an investigation, [the Board] could not have been the moving force causing the alleged constitutional violation.")

15

## IV.    CONCLUSION

For all the foregoing reasons, the Court GRANTS plaintiffs' application to proceed *in forma pauperis* (Doc. No. 2) and DISMISSES the action pursuant to 28 U.S.C. § 1915(e). Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.


Dated: July 10, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**